IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN FLEET | : CIVIL ACTION |
| v. | : NO. 17-3562 |
| CSX INTERMODAL, INC., CSX INTERMODAL TERMINALS, INC., JONATHAN LOWE, individually, and RYAN GOMEZ, individually | : |

KEARNEY, J.                                                                                                           December 20, 2017

## MEMORANDUM

A worker challenging his termination as based on race or disability discrimination and retaliation may sue his employer under federal law. Suing individual supervisors is a much more difficult task. When the supervisors are not his employer, the worker must show the supervisor's personal involvement in the alleged misconduct adversely affected the worker's conditions of employment or otherwise dissuaded proper reporting of the alleged misconduct. When, as here, the worker broadly alleges a supervisor's liability based on a decision to send the worker home early one day possibly with pay but with very little plead involvement in his termination based on discrimination or retaliation, we must dismiss the supervisor from the case even if he is described in briefing as a "central character" unless, with one last chance to amend, the worker can plead facts of personal involvement in good faith. We grant the supervisor's motion to dismiss without prejudice to file a second amended complaint consistent with this Memorandum in the accompanying Order.

## I. Alleged facts.

John Fleet, an African-American, worked as a rail yard worker for CSX Intermodal Terminals, Inc. from November 2015 until March 2017.[1] Mr. Fleet suffers from diabetes resulting in an abnormal metabolism of carbohydrates and elevated levels of glucose sugars in his blood.[2] To manage his blood sugar, Mr. Fleet must eat and drink frequently.[3] Mr. Fleet's constant intake of nutrients and liquids necessitates frequent trips to the restroom.[4]

Upon being hired, Mr. Fleet immediately notified CSX about his medical condition.[5] Soon after starting work at CSX, Mr. Fleet claims his diabetic condition created tension in the workplace. Mr. Fleet claims unnamed employees of CSX often reprimanded him for taking too many breaks.[6] Mr. Fleet also alleges unnamed employees of CSX reprimanded him for eating a sandwich during a team meeting, which Mr. Fleet claims he only did to manage his diabetes.[7] On June 12, 2016, Mr. Fleet's diabetes became so bad he requested a medical leave of absence under the Family and Medical Leave Act.[8] CSX granted Mr. Fleet's request.

The tension between Mr. Fleet and CSX employees escalated towards the end of 2016. In October 2016, Mr. Fleet returned to work despite his uncontrolled diabetic condition.[9] Soon thereafter, Mr. Fleet noticed one of his supervisors, Ryan Gomez, followed him while he worked, including his frequent trips to the restroom.[10] Mr. Fleet told Supervisor Gomez about his diabetic condition and his corresponding needs.[11] During this time, Mr. Fleet felt so threatened by Supervisor Gomez's presence he called the CSX ethics hotline to report Supervisor Gomez for harassment and complain CSX failed to accommodate his need for frequent restroom breaks.[12]

On December 31, 2016, the tension between Mr. Fleet and his coworkers came to a head. While Mr. Fleet took a break to manage his diabetic condition, he overheard a coworker, Mike

Pote, a Caucasian man, comment about employees taking unscheduled breaks.[13] Mr. Fleet confronted Mr. Pote about his comment and reported Mr. Pote to Supervisor Gomez.[14] Mr. Fleet told Supervisor Gomez he felt CSX and its employees treated Caucasian employees more fairly than African-American employees.[15] Following his conversation with Mr. Fleet, Supervisor Gomez spoke with Mr. Pote concerning the alleged comment made over the radio.[16] Supervisor Gomez then spoke with another supervisor, Jonathan Lowe.[17] Supervisor Lowe determined Mr. Fleet should be sent home until his next shift.[18] Based on Supervisor Lowe's decision, Supervisor Gomez instructed Mr. Fleet to go home until his next scheduled shift.[19] Mr. Fleet does not plead why Supervisor Lowe instructed him to go home. After being told to go home, Mr. Fleet complained to Supervisor Gomez the decision to send him home constituted racial discrimination.[20]

On January 6, 2017, CSX sent Mr. Fleet a letter charging him with insubordination, unprofessional conduct, conduct inimical to the company's interest, dereliction of duty, and violation of the safety rules.[21] CSX scheduled a hearing to discuss Mr. Fleet's continued employment for January 13, 2017.[22] The pending charges prevented Mr. Fleet from working before the hearing.[23] On January 12, 2017, CSX delayed the hearing until February 2, 2017.[24] On February 2, 2017, Mr. Fleet attended the hearing along with representatives from his employee union.[25] On March 2, 2017, CSX terminated Mr. Fleet's employment.[26]

**II.   Analysis**

Mr. Fleet sued CSX and Supervisors Gomez and Lowe individually.[27] Mr. Fleet claims CSX and Supervisors Gomez and Lowe discriminated and retaliated against him because of his diabetic disability, his race, in retaliation for his reporting CSX employees' discriminatory conduct, and his use of medical leave. Supervisor Lowe separately moves to dismiss.[28] We

3

grant Supervisor Lowe's motion to dismiss because Supervisor Lowe may not be held individually liable under Title VII or Section 955(a) of the Pennsylvania Human Relations Act, and Mr. Fleet fails to allege facts demonstrating Supervisor Lowe's involvement in the alleged discriminatory and retaliatory conduct.

### A. Title VII and Section 955(a) do not allow for individual liability against Supervisor Lowe.

Mr. Fleet claims Supervisor Lowe violated Title VII and Section 955(a) of the Pennsylvania Human Relations Act. Supervisor Lowe argues he cannot be held individually liable under these statutes. It is unclear whether Mr. Fleet attempts to assert these claims against Supervisor Lowe as the title of his claims conflict with his supporting allegations. In his response to Supervisor Lowe's motion to dismiss, Mr. Fleet admits he cannot pursue individual liability under Title VII. To the extent Mr. Fleet attempts to bring claims against Supervisor Lowe individually under Title VII and Section 955(a), his claims fail. Title VII and Section 955(a) provide a basis for liability against employers, not individual employees.[29] Mr. Fleet does not allege Supervisor Lowe is his employer. Mr. Fleet's Title VII and Section 955(a) claims against Supervisor Lowe are dismissed with prejudice.

### B. Mr. Fleet's discrimination, retaliation, and aiding and abetting claims against Supervisor Lowe fail because he does not allege personal involvement in the alleged discrimination and retaliation.

Mr. Fleet claims Supervisor Lowe is liable in his individual capacity for discrimination, retaliation, and aiding and abetting discrimination and retaliation under Section 1981, the Pennsylvania Human Relations Act, the Fair Practices Ordinance, and the Family and Medical Leave Act. Supervisor Lowe argues Mr. Fleet does not sufficiently allege personal involvement in the alleged discrimination and retaliation. Mr. Fleet argues Supervisor Lowe "could have been present" during alleged acts of discrimination by other CSX employees and it is "highly

probabl[e]" Supervisor Lowe heard Mr. Pote's comments over the radio before deciding to send Mr. Fleet home. Mr. Fleet also argues Supervisor Lowe acted as "a central character" in sending Mr. Fleet home, placing Mr. Fleet out of service, and participating in the hearing which lead to Mr. Fleet's termination.

To state a claim, Mr. Fleet must allege the individual's personal involvement in the alleged discrimination and retaliation.[30] Mr. Fleet fails to allege facts demonstrating Supervisor Lowe's personal involvement in the alleged discrimination and retaliation. Mr. Fleet alleges Supervisor Lowe determined Mr. Fleet should be sent home and return for his next shift after Mr. Fleet's confrontation with Mr. Pote.[31] Mr. Fleet alleges he told Supervisor Gomez he believed CSX and its employees treated Caucasians more fairly than African-American employees.[32] But Mr. Fleet does not allege he or Supervisor Gomez told the same to Supervisor Lowe. Nor does he allege Supervisor Lowe knew about Mr. Fleet's complaint or alleged acts of discrimination by CSX employees. Mr. Fleet also does not allege Supervisor Lowe knew about Mr. Fleet's complaints to the CSX ethics hotline nor do the alleged facts allow for an inference of such knowledge. Mr. Fleet's argument Supervisor Lowe "could have been present" during acts of discrimination are insufficient in light of the alleged facts in the amended complaint.

Mr. Fleet does not allege facts suggesting Supervisor Lowe considered Mr. Fleet's race, disability, or medical leave in deciding to send Mr. Fleet home for the day. Mr. Fleet does not generally allege Supervisor Lowe intended to discriminate or retaliate against him by sending him home. As plead, Supervisor Lowe's decision appears directed towards diffusing the confrontation between Mr. Fleet and Mr. Pote rather than discriminating or retaliating against Mr. Fleet.[33] Mr. Fleet fails to allege sufficient facts showing Supervisor Lowe discriminated or retaliated against him by sending him home. Mr. Fleet also fails to allege facts demonstrating

5

Supervisor Lowe's involvement in the decision to place Mr. Fleet out of service or Supervisor Lowe's involvement in the hearing leading to Mr. Fleet's termination.

Mr. Fleet's allegations against Supervisor Lowe are also insufficient to state an aiding and abetting discrimination and retaliation claim. Mr. Fleet does not allege Supervisor Lowe directly acted in a discriminatory manner.[34] Mr. Fleet also does not allege Supervisor Lowe failed to act to prevent further discrimination.[35] Supervisor Lowe may have acted as "a central character" as argued in Mr. Fleet's response papers, but the alleged facts do not reflect or allow for a reasonable inference Supervisor Lowe acted in a role sufficient to allow Mr. Fleet to pursue individual liability against him. Mr. Fleet fails to state a claim for aiding and abetting discrimination and retaliation.

### III. Conclusion

Mr. Fleet fails to state a claim against Supervisor Lowe in his individual capacity. Mr. Fleet failed to allege Supervisor Lowe's personal involvement in the alleged discriminatory and retaliatory acts. We dismiss Mr. Fleet's Title VII and Section 955(a) claims against Supervisor Lowe with prejudice because Title VII and Section 955(a) do not provide a basis for individual liability. We dismiss Mr. Fleet's claims under Section 1981, the Family and Medical Leave Act, Section 955(d) and (e) of the Pennsylvania Human Relations Act, and Section 9-1103 of the Fair Practices Ordinance against Supervisor Lowe without prejudice and we allow Mr. Fleet leave to file a second amended complaint, if possible, under Fed. R. Civ. P. 11.

---

[1] ECF Doc. No. 10, at ¶¶ 10, 20.

[2] *Id.* at ¶¶ 23-24.

[3] *Id.* at ¶ 25.

[4] *Id.* at ¶ 27.

6

[5] *Id.* at ¶ 23.

[6] *Id.* at ¶ 26.

[7] *Id.* at ¶ 28.

[8] *Id.* at ¶ 30.

[9] *Id.* at ¶¶ 31-32.

[10] *Id.* at ¶ 33.

[11] *Id.*

[12] *Id.* at ¶ 34.

[13] *Id.* at ¶¶ 35-36.

[14] *Id.* at ¶ 37.

[15] *Id.* at ¶ 38.

[16] *Id.* at ¶ 39.

[17] *Id.* at ¶ 40.

[18] *Id.*

[19] *Id.* at ¶ 41.

[20] *Id.* at ¶ 42.

[21] *Id.* at ¶ 43.

[22] *Id.* at ¶ 44.

[23] *Id.* at ¶ 45.

[24] *Id.*

[25] *Id.* at ¶ 46.

[26] *Id.*

---

[27] CSX Intermodal Terminals Inc. filed an Answer to the amended complaint on December 1, 2017. ECF Doc. No. 15. The parties filed a stipulation of dismissal with prejudice as to CSX Intermodal, Inc. on December 14, 2017. ECF Doc. No. 19. Mr. Fleet has not yet filed an affidavit of service upon Ryan Gomez.

[28] In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[29] *Hukman v. US Airways/American Airlines*, No. 17-0741, 2017 WL 3310677, at *3 (E.D. Pa. Aug. 3, 2017) (citing *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996)) ("[T]he law is clear in this Circuit that 'individual employees cannot be held liable under Title VII."); *Beaubrun v. Inter Cultural Family*, No. 05-06688, 2006 WL 1997371, at *3 (E.D. Pa. Jul. 13, 2006) (individuals may not be held liable under Section 955(a)).

[30] *See Lei Ke v. Drexel Univ.*, No. 11-6708, 2013 WL 1092661, at *14 (E.D. Pa. Mar. 14, 2013) (personal involvement is essential under Section 1981); *Edelman v. Source Healthcare Analytics, LLC*, No. 16-6280, 2017 WL 3034329, at *4 (E.D. Pa. Jul. 18, 2017) (supervisor is liable under FMLA when individual is "responsible in whole or in part for the alleged violation"); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 496-97 (M.D. Pa. 2005) (supervisor liable under Section 955(e) for direct acts of discrimination or failure to act to prevent further discrimination); *Clinkscales v. Children's Hosp. of Phila.*, No. 06-3919, 2009 WL 1259104, at *6 (E.D. Pa. May 7, 2009) (boilerplate allegations insufficient to state a claim under Section

955(d)); *Vazquez v. Car & Duff, Inc.*, No. 16-1727, 2017 WL 4310253, at *8 (E.D. Pa. Sept. 28, 2017) (retaliation claim under Fair Practices Ordinance against individual failed where plaintiff failed to allege individual "had a hand" in the alleged retaliatory conduct).

[31] ECF Doc. No. 10, at ¶ 40.

[32] *Id.* at ¶ 38.

[33] To the extent Mr. Fleet relies on Supervisor Lowe's decision to send him home as an adverse employment action in his discrimination claims, Mr. Fleet's allegation fails. Being sent home from work **without pay** is a material change to the terms and conditions of employment. *See Davis v. Mothers Work, Inc.*, No. 04-3943, 2005 WL 1863211, at *4 n.8 (E.D. Pa. Aug. 4, 2005). Being sent home without pay is also sufficient to dissuade a reasonable worker from engaging in protected activity. *See Mills v. Temple Univ.*, 869 F. Supp. 2d 609, 627 (E.D. Pa. 2012). Although both opinions cited were decided at the summary judgment stage, we find the propositions applicable at the motion to dismiss stage. Mr. Fleet does not allege he lost pay or otherwise experienced a material change to the terms and conditions of his employment as a result of being sent home early. Being sent home early without a corresponding allegation of lost pay or other factor dissuading a reasonable worker from engaging in protected activity is also insufficient to support a retaliation claim.

[34] *See Holocheck*, 385 F. Supp. 2d at 496-97 (supervisor liable under Section 955(e) for direct acts of discrimination or failure to act to prevent further discrimination); *Vazquez*, 2017 WL 4310253, at *8 (applying Section 955(e) analysis to Fair Practices Ordinance aiding and abetting claim).

[35] *See id.*