# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOHN FLEET | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | NO. 17-3562 |
| | : | |
| CSX INTERMODAL, INC., *et al.* | : | |

KEARNEY, J.                                                                                                              March 8, 2018

## MEMORANDUM

Discharged employees may wish to sue everyone they believe caused them to lose a job. To proceed, they must plead facts from which we can plausibly find a claim. We today review a discharged employee's fourth attempt to sue one of his former supervisors. Pleading an employment supervisor's personal liability for race discrimination causing an adverse employment action requires pleading the supervisor's personal involvement. After four tries, the employee barely states a race discrimination claim arising from one incident when the supervisor sent him home from work for the balance of his shift – and possibly causing a loss in wages for the balance of the shift - after learning of the employee's concern the employer treated African American employees differently than Caucasian employees. While far from clear, we will allow discovery into whether the former employee can excuse his failure to name or identify his supervisor in his administrative charge as required by our court of appeals to proceed on his state law discrimination claims. For now, his race-based claim against the supervisor arising from the "go home early" incident may proceed. In the accompanying Order, we dismiss his other claims against the supervisor.

## I. Alleged Facts

John Fleet worked for CSX Intermodal Terminals, Inc. ("CSX") from November 2015 until March 2017. Mr. Fleet, an African American, told CSX of his diabetes requiring accommodations to eat and drink to keep his insulin levels stable.[1] Mr. Fleet alleges Defendants CSX and its supervisory operations managers Jonathan Lowe and Ryan Gomez ignored his accommodation requests and repeatedly reprimanded him for taking too many breaks to use the restroom.[2] Mr. Gomez issued a written reprimand to Mr. Fleet for eating a sandwich despite knowing of his diabetes.[3] Mr. Lowe knew of the written reprimand.[4]

In June 2016, Mr. Fleet requested intermittent medical leave under the Family and Medical Leave Act ("FMLA")[5] to receive care necessary to lower his elevated blood sugar levels.[6] In response, Mr. Lowe "placed [Mr. Fleet] out of service due to his elevated glucose levels."[7] Although not entirely clear, Mr. Fleet apparently remained out of work for four months until October 2016 when "Defendants" requested he return to work despite glucose levels higher than the June 2016 levels.[8] When Mr. Fleet returned to work in October, Mr. Gomez began following Mr. Fleet at work, including to the restroom, despite Mr. Fleet's explaining he needed frequent restroom use because of his diabetes.[9] Mr. Fleet called CSX's ethics hotline to report Mr. Gomez's conduct, "Defendants'" continued harassment, and failure to accommodate his disability despite his request.[10]

While taking a break on December 31, 2016, Mr. Fleet overheard co-worker Mike Pote, a Caucasian, commenting about "unscheduled breaks."[11] Mr. Fleet approached Mr. Pote about the comments and then reported the comments as harassment to Mr. Gomez.[12] Mr. Fleet also told Mr. Gomez he felt Caucasian employees are treated more fairly than African American employees.[13] Mr. Gomez told Mr. Lowe of Mr. Fleet's concern.[14] Mr. Lowe decided Mr. Fleet

should leave work until his next scheduled shift, and Mr. Gomez, on Mr. Lowe's order, sent Mr. Fleet home from work.[15] Mr. Fleet objected, telling Mr. Gomez sending him home from work while ignoring Mr. Pote's conduct constitutes race discrimination.[16]

One week later, on January 6, 2017, CSX charged Mr. Fleet with "insubordination, unprofessional conduct, conduct inimical to the company's interest, dereliction of duty, and violation of the Safety Rule(s)."[17] Defendants rescheduled a January 13, 2017 hearing with Mr. Fleet's union representative until February 2, 2017, keeping him out of work without pay.[18] Mr. Fleet alleges Mr. Lowe knew of the union's investigation and knew Mr. Fleet remained out of work without pay during the union's investigation and before the hearing.[19] Defendants terminated Mr. Fleet after a March 2, 2017 hearing.[20]

Mr. Fleet filed a Charge of Discrimination based on race discrimination with the Equal Employment Opportunity Commission (EEOC), dual-filed with the Pennsylvania Human Relations Commission (PHRA) and Philadelphia Commission on Human Relations (PCHR) naming CSX as respondent and identifying Mr. Gomez in the body of the charge.[21] Mr. Fleet did not name Mr. Lowe as a respondent or identify him in the body of the Charge of Discrimination. The EEOC dismissed the charge and issued a right-to-sue letter presumably without investigation or proceedings.[22]

Mr. Fleet then sued CSX and Mr. Gomez but also added Mr. Lowe. Mr. Fleet alleges Defendants terminated him because of disability and race; in retaliation for opposing and reporting discriminatory conduct and failure to accommodate his disability; and, in retaliation for taking FMLA leave.[23] Mr. Fleet alleges discrimination on the basis of race and retaliation in violation of Title VII[24] against CSX only. He sues all Defendants alleging: discrimination on the basis of race and retaliation in violation of 42 U.S.C. § 1981; discrimination on the basis of race

3

in violation of §§ 955(a) and (d) of the Pennsylvania Human Relations Act ("PHRA")[25]; aiding and abetting in violation of § 955(e) of the PHRA; discrimination, retaliation, and aiding and abetting in violation of the Philadelphia Fair Practice Ordinance ("PFPO")[26]; and, retaliation in violation of the FMLA.

We are now reviewing Mr. Fleet's fourth attempt at pleading a claim against Mr. Lowe. Mr. Fleet alleges Mr. Lowe (1) knew, and was present for, the written reprimand Mr. Gomez gave Mr. Fleet for eating a sandwich despite knowing of his diabetic condition; (2) aware of Mr. Fleet's diabetes, "placed [Mr. Fleet] out of service due to his elevated glucose levels" in response to Mr. Fleet's request for FMLA leave; (3) ordered Mr. Fleet to be sent home from work on New Year's Eve 2016 until his next scheduled shift after Mr. Gomez told him about Mr. Fleet's report of the "unscheduled breaks" comment and his belief Caucasian employees are treated more fairly than African American employees; and (4) knew the union's investigation in early 2017 and delays in scheduling the union's hearing would keep Mr. Fleet out of work without pay.[27]

## II. Analysis

We grant in part and deny in part Mr. Lowe's fourth motion to dismiss.[28] Mr. Lowe again argues there are no allegations of Mr. Lowe's involvement in the decision to terminate Mr. Fleet's employment and no allegations Mr. Lowe took an adverse employment action against Mr. Fleet, and, even if Mr. Fleet sufficiently alleges claims under the PHRA or PFPO, he failed to exhaust his administrative remedies.[29]

We apply the well-settled standard of review under Federal Rule of Civil Procedure 12(b)(6); Mr. Fleet's complaint must contain sufficient facts accepted as true to state a claim to relief plausible on its face.[30] To survive the motion to dismiss, Mr. Fleet must "nudge [his] claims across the line from conceivable to plausible."[31]

4

### A. Mr. Fleet plausibly alleges a claim against Mr. Lowe under § 1981 and retaliation claims under the PHRA and PFPO limited to the December 31, 2016 incident.

Mr. Fleet alleges CSX terminated him on March 2, 2017 because of his disability and race, in retaliation for opposing and reporting Defendants' discriminatory conduct and failing to accommodate his disability, and in retaliation for taking FMLA leave.[32]

Section 1981 prohibits discrimination based on race.[33] In employment discrimination cases, Section 1981 claims "are subject to the same analysis as discrimination claims under Title VII."[34] To state a claim for discrimination under Section 1981, Mr. Fleet must plead "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination."[35] Employees may be personally liable under Section 1981 "when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable."[36] "If individuals are personally involved in the discrimination against [plaintiff], and if they intentionally caused [employer] to infringe on [plaintiff's] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable."[37] There must be "some affirmative link to causally connect the actor with the discriminatory action."[38]

The PHRA and PFPO prohibit, *inter alia*, discrimination based on race and disability. Section 955(d) of the PHRA and Section 9-1103(1)(g) of the PFPO impose liability on "any person" for retaliation.[39] To state a claim for retaliation under the PHRA and PFPO, Mr. Fleet must plead "(1) protected activity; (2) adverse action by the employer either after or

contemporaneous with the employee's protected activity; and (3) causal connection between the employee's protected activity and the employer's adverse action."[40]

The PHRA and PFPO also impose liability on any person who aids and abets unlawful discriminatory employment practices.[41] Mr. Fleet asserts two aiding and abetting claims under PHRA and PFPO. Liability under these statutes may be imposed "for a supervisor's own discriminatory conduct or their failure to take action against discrimination experienced by the employee."[42]

There is only one allegation relating to Mr. Lowe's conduct plausibly alleging race-based discrimination and retaliation.[43] Mr. Fleet alleges on December 31, 2016, Mr. Lowe ordered Mr. Fleet to "leave work until his next scheduled shift" upon learning from Mr. Gomez of the "unscheduled breaks" comment from Mr. Pote and of Mr. Fleet's report to Mr. Gomez of disparate treatment between Caucasian and African American employees.[44] One week later, CSX sent a letter to Mr. Fleet charging him with insubordination, unprofessional conduct, and other offenses and he did not return to work pending a union investigation and hearing.[45]

Although not specifically pleaded, we can plausibly infer from Mr. Fleet's allegation he did not earn income when "out of service" during the union's investigation to mean when sent home on December 31, 2016, he did not earn a salary. As barely alleged, being sent home without pay may constitute an adverse employment action.[46] It is by the thinnest of margins we allow Mr. Fleet's claims of race-based discrimination under Section 1981 and race-based retaliation and aiding and abetting under the PHRA and PFPO to proceed against Mr. Lowe, but limited to the December 31, 2016 incident. This allegation nudges over the plausibility line Mr. Lowe discriminated against Mr. Fleet on the basis of race, retaliated against him for making a complaint of disparate racial treatment, and aided and abetted unlawful discriminatory practices.

6

### B. Based on the current record, Mr. Fleet's PHRA and PFPO claims are not barred by his failure to exhaust administrative remedies.

Mr. Lowe moves to dismiss Mr. Fleet's PHRA and PFPO claims for failing to exhaust administrative remedies, arguing the Charge of Discrimination Mr. Fleet filed with the EEOC (the "Charge") does not name Mr. Lowe as a respondent in the caption or name him in the body of the Charge.[47] Mr. Lowe argues he did not have notice he could be sued in his personal capacity.

To bring PHRA claims, Mr. Fleet must first file an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged act of discrimination.[48] Although the Pennsylvania Supreme Court has not decided whether the PFPO requires exhaustion of administrative remedies prior to bring claims, courts within our district and the Pennsylvania Commonwealth Court require exhaustion under the PFPO.[49] The PFPO provides 300 days following the commission of an alleged unlawful employment practice to file an administrative complaint.[50]

An action may only be brought against a party previously named in an administrative charge.[51] Mr. Fleet did not name Mr. Lowe in the administrative charge. But there is an exception to this bar where the "unnamed party received notice and when there is a shared commonality of interest with the named party."[52] Our court of appeals requires we consider four factors to determine whether an unnamed party in an administrative charge may be sued in a subsequent civil action: "1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from

7

the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party."[53] The *Glus* test "is not a mechanical one" and "no single factor is decisive."[54]

It is undisputed Mr. Lowe is not named in the caption or in the body of the Charge. Mr. Fleet's claims against Mr. Lowe must be dismissed as unexhausted unless the "commonality of interest" exception applies. Mr. Lowe does not specifically argue against the "commonality of interest" exception under the *Glus* factors. He argues only he did not have notice of any claims against him in his individual capacity.[55]

Mr. Fleet does not argue for the exception under the *Glus* factors. He instead argues his "hostile work environment claims are the natural outcrop of the race discrimination that he alleged at the time he filed his EEOC charge."[56] But this response misses the mark. Mr. Lowe does not argue Mr. Fleet failed to exhaust his administrative remedies because the *claims* in the complaint are not "fairly within the scope" of the EEOC charge; Mr. Lowe argues he did not have notice of claims against him because he is not named in the Charge.[57]

Applying the *Glus* factors and at this preliminary stage, we find the largely undisputed factor of Mr. Lowe's commonality of interest with his employer in an EEOC proceeding warrants allowing discovery. The first factor - whether Mr. Fleet through reasonable effort could have ascertained Mr. Lowe's role at the time of the EEOC Charge – weighs against Mr. Fleet. The Charge specifically refers to Mr. Gomez's role. Mr. Fleet fails to explain why he could not, through reasonable effort, have ascertained Mr. Lowe's role especially as to Mr. Lowe's conduct towards him.

8

Applying the second factor, we examine whether, under the circumstances, the interests of CSX are so similar to Mr. Lowe that for purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include Mr. Lowe in the EEOC proceedings. Mr. Fleet pleads Mr. Lowe is an Operations Manager and his supervisor. It is plausible CSX could have resolved all claims involving Mr. Lowe's conduct, as its employee, during the EEOC proceeding. At this stage, Mr. Fleet alleges Mr. Lowe's supervisor role with CSX suggesting the second favor weighs in Mr. Fleet's favor.

The third factor examines whether Mr. Lowe's absence from the EEOC proceedings prejudiced him. Mr. Lowe does not articulate prejudice and we see no evidence of EEOC proceedings, weighing in favor of Mr. Fleet.[58] The fourth factor examines whether Mr. Lowe in some way represented to Mr. Fleet their relationship is to be through CSX. Mr. Fleet does not plead or argue as to Mr. Lowe's representing this fact. Absent a basis, we cannot find for Mr. Fleet or Mr. Lowe on this factor.

Two of the three *Glus* factors weigh in favor of Mr. Fleet. Again by the thinnest of margins, we will allow him to proceed into discovery with his PHRA and PFPO claims. Mr. Lowe may raise the exhaustion issue if, after discovery, a fully developed factual record shows Mr. Fleet does not meet the *Glus* factors.

### C. Mr. Fleet fails to allege an FMLA retaliation claim against Mr. Lowe.

Mr. Fleet alleges his entitlement to FMLA leave because of his high glucose levels beginning in June 12, 2016.[59] He alleges upon his return to work in October 2016, "Defendants" "began following [him] around and harassing him because of his disability and because [he] was entitled to FMLA leave."[60] To state a FMLA retaliation claim, Mr. Fleet must allege "(1) [he]

9

invoked his right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to [his] invocation of rights."[61]

Mr. Lowe moves to dismiss this retaliation claim against him arguing Mr. Fleet does not allege his personal involvement in a FMLA violation. An individual may be liable for violations of the FMLA where he "exercises 'supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation' while acting in the employer's interest."[62]

As we held earlier, Mr. Fleet does not allege Mr. Lowe acted against Mr. Fleet in retaliation for taking FMLA leave; he does not allege an adverse employment decision; and, he does not allege an adverse employment action causally related to Mr. Fleet's invoking FMLA leave. He does not allege Mr. Lowe took any of the alleged retaliatory conduct – following Mr. Fleet around and harassing him and is conduct instead attributed to Mr. Gomez. Even accepting as true the allegation Mr. Lowe consented to, by his presence, the written reprimand for eating a sandwich, and even accepting (solely for sake of argument) the written reprimand could be an adverse action, Mr. Gomez issued the written reprimand before Mr. Fleet invoked his right to FMLA leave. There are no allegations Mr. Lowe took any action in retaliation for FMLA leave. We dismiss this claim.

### D. There is no individual liability under Section 955(a) of the PHRA.

Again, as we earlier held in dismissing these same claims, Title VII and Section 955(a) of the PHRA provide a basis for liability against employers, not individuals.[63] The third amended complaint corrected this problem in part by asserting race-based discrimination and retaliation claims under Title VII against CSX only. But Mr. Fleet inexplicably pleads a Section 955(a)

10

PHRA claim against Mr. Lowe in Count Four. For the reasons explained in our earlier memorandum, we again dismiss with prejudice the Section 955(a) claim against Mr. Lowe.

### III. Conclusion

In the accompanying Order, we deny Mr. Lowe's motion as to Counts One, Five, Six, Seven, Eight, and Nine limited solely to the December 31, 2016 incident. We grant Mr. Lowe's motion to dismiss Counts Four and Ten in their entirety and as to any claims in Counts One, Five, Six, Seven, Eight, and Nine based on Mr. Lowe's conduct other than the December 31, 2016 "going home early" incident.

---

[1] ECF Doc. No. 33 at ¶¶ 23, 26.

[2] *Id.* at ¶¶ 17-18, 20-21, 27-28.

[3] *Id.* at ¶¶ 29-30.

[4] *Id.* at ¶ 30.

[5] 29 U.S.C. § 2601 *et seq.*

[6] ECF Doc. No. 33 at ¶¶ 31-32.

[7] *Id.* at ¶ 33.

[8] *Id.* at ¶ 34.

[9] *Id.* at ¶ 35.

[10] *Id.* at ¶ 36.

[11] *Id.* at ¶ 37.

[12] *Id.* at ¶ 38.

[13] *Id.* at ¶ 39.

[14] *Id.* at ¶ 41.

[15] *Id.*

[16] *Id.* at ¶ 42.

[17] *Id.* at ¶ 43.

[18] *Id.* at ¶¶ 44-45.

[19] *Id.* at ¶ 46.

[20] *Id.* at ¶ 48.

[21] *Id.* at ¶ 5; ECF Doc. No. 36-2.

[22] ECF Doc .No. 36-2.

[23] ECF Doc. No. 33 at ¶ 48.

[24] 42 U.S.C. § 2000e *et seq.*

[25] 43 Pa. C.S.A. § 951 *et seq.*

[26] Phila. Code Chapter 9-1100 *et seq.*

[27] ECF Doc. No. 33 at ¶¶ 30, 33, 41, 46.

[28] After Mr. Lowe moved to dismiss the original complaint, Mr. Fleet filed an amended complaint. ECF Doc. No. 10. Mr. Lowe again filed a motion to dismiss, including an argument there is no individual liability under Title VII and § 955(a) of the PHRA. ECF Doc. No. 14. We granted Mr. Lowe's motion with prejudice as to the Title VII and § 955(a) PHRA claims, and without prejudice as to the remaining claims with leave for Mr. Fleet to file a second amended complaint to cure, if possible, the pleading deficiencies as detailed in our memorandum. ECF Doc. Nos. 23, 24. When we addressed Mr. Lowe's motion to dismiss the amended complaint, the only substantive allegation regarding Mr. Lowe's conduct amounted to his determination Mr. Fleet should leave work until his next scheduled shift after being told by Mr. Gomez of Mr. Pote's "unscheduled break" comments. ECF Doc. No. 10 at ¶ 40. We found the amended complaint failed to allege Mr. Lowe's personal involvement sufficient to hold him individually liable. *Fleet v. CSX Intermodal, Inc.*, No. 17-3562, 2017 WL 6520535, *3-*4 (E.D. Pa. Dec. 20, 2017). Mr. Fleet filed a second amended complaint naming the wrong corporate defendant despite the parties' earlier stipulation regarding the proper corporate defendant. ECF Doc. No. 25. The parties earlier stipulated to the dismissal with prejudice of CSX Intermodal, Inc. ECF Doc. No. 19. In the stipulation, CSX affirmed it is the entity employing Mr. Fleet, it is the proper corporate defendant, and there is no such entity as "CSX Intermodal, Inc." *Id.* Mr. Lowe filed another motion to dismiss. ECF Doc. No. 26. After a status call with counsel concerning the appropriate defendant, claims against Mr. Lowe based on an "aiding and abetting" theory, and service on Mr. Gomez, we dismissed the second amended complaint without prejudice to file

a third amended complaint and denied as moot Mr. Lowe's motion to dismiss the second amended complaint. ECF Doc. No. 30. We did not rule on the merits of Mr. Lowe's motion to dismiss the second amended complaint.

[29] ECF Doc. No. 36. CSX and Mr. Gomez answered the third amended complaint. ECF Doc. Nos. 34, 35.

[30] *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) we "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) we "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[31] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[32] ECF Doc. No. 33 at ¶ 48.

[33] *Castleberry v. STI Group*, 863 F.2d 259 (3d Cir. 2017).

[34] *Id.* at 263; *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009) ("the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII").

[35] *Barnees v. Nationwide Mut. Ins. Co.*, 598 F.App'x 86, 89 (3d Cir. 2015) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (Title VII elements).

[36] *Al-Khazraji v. St. Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986), *aff'd* 481 U.S. 604 (1987) (citations omitted); *Johnson v. Res. for Human Dev.*, 843 F.Supp. 974, 978 (E.D. Pa. 1994).

[37] *Id.* (citations omitted).

[38] *Johnson*, 843 F.Supp. at 978 (citing *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991)).

[39] The PHRA makes it unlawful "[f]or any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 Pa. C.S.A. § 955(d). The PFPO makes it unlawful "[f]or any person to harass, threaten, harm,

damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he . . . has complied with the provisions of this Chapter, exercised his . . . rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder. Phila. Code, Chapter 9-1103(1)(g).

[40] *Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 300 (3d Cir. 2007) (quoting *Fogelman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002). PHRA claims are interpreted "coextensively with Title VII claims." *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). Similarly, PFPO claims are interpreted under Title VII. *Ahern v. Eresearch Tech., Inc.*, 183 F.Supp. 3d 663, 668 (E.D. Pa. 2016) (citing *Joseph v. Cont'l Airlines Inc.*, 126 F.Supp. 2d 373, 376 n.3 (E.D. Pa. 2000)).

[41] Section 955(e) of the PHRA imposes individual liability on any person who "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice." 43 Pa. C.S.A. §955(e). Section 9-1103(1)(h) of the PFPO imposes liability "[f]or any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

[42] *Ahern*, 183 F.Supp. 3d at 671.

[43] There are no other allegations of a race-based termination involving Mr. Lowe; there are no allegations Mr. Lowe had any involvement in the decision to terminate Mr. Fleet or in the union's investigation and hearing, including rescheduling the hearing, culminating in his termination on March 2, 2017. Mr. Lowe's knowledge of the written reprimand for eating a sandwich is not race-based, and "plac[ing] [Mr. Fleet] out of service" in response to Mr. Fleet's FMLA request cannot serve as the basis of a Section 1981 claim. Even considering the written reprimand in the context of a retaliation claim based on disability under the PHRA and PFPO, "a written reprimand is insufficient, by itself, to establish an adverse employment action." *McKnight v. Aimbridge Emp. Serv. Corp.*, No. 15-3461, 2016 WL 8716275 at *7 (citing *Mieczkowski v. York City Sch. Dist.*, 414 F.App'x 441, 446-47 (3d Cir. 2011)). Mr. Fleet fails to allege the written reprimand adversely affected the terms or conditions of his employment. *Clark v. Phila. Hous. Auth.*, 701 F.App'x 113, 117 (3d Cir. 2017).

[44] ECF Doc. No. 33 at ¶ 41.

[45] ECF Doc. No. 33 at ¶¶ 41-45.

[46] *Id.* at ¶ 45. We identified at least one case from this district allowing, at the motion to dismiss stage, an allegation of being sent home from work without pay to constitute an adverse

employment action for purposes of a racial discrimination claim under Title VII, Section 1981, and the PHRA. *Davis v. Mothers Work, Inc.*, No. 04-3943, 2005 WL 1863211, at *4 n. 8 (E.D. Pa. Aug. 4, 2005).

[47] The EEOC charge is attached to Mr. Lowe's motion to dismiss. ECF Doc. No. 36-2. On a motion to dismiss, we may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 196 (3d Cir. 1993). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents"). Mr. Fleet's third amended complaint alleges he filed a charge with the EEOC, dual filed with the PHRC and PCHR. ECF Doc. No. 33 at ¶ 5. Mr. Fleet does not contest the authenticity of the Charge in his response to the motion to dismiss.

[48] 43 Pa.C.S.A. § 959(h); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997); *Olivieri v. Cnty. of Bucks*, 502 F.App'x 184, 190 (3d Cir. 2012).

[49] *Vazquez v. Carr and Duff, Inc.*, No. 16-1727, 2017 WL 4310253, at * 8 (E.D. Pa. Sept. 28, 2017) (citing *Ives v. NHS Human Servs.*, No. 15-5317, 2016 WL 4039644, at *3 (E.D. Pa. July 27, 2016)); *Ahern*, 183 F.Supp. 3d at 668 (citing *Richards v. Foulke Assocs., Inc.*, 151 F.Supp. 2d 610, 616 (E.D. Pa. 2001); *Marriott Corp. v. Alexander*, 799 A.2d 205, 208 (Pa. Commw. Ct. 2002) (adopting *Richards*).

[50] *Vazquez*, 2017 WL 4310253 at *8 (citing Phila. Code §9-1112).

[51] *Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*, 903 F.3d 243, 251-52 (3d Cir. 1990).

[52] *Id.* at 252 (citing *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds*, 451 U.S. 935 (1981)).

[53] *Glus*, 629 F.2d at 251.

[54] *Id.*

[55] Mr. Lowe cites two cases granting motions to dismiss claims against individuals not named in administrative charges. *Hills v. Borough of Colwyn*, 978 F.Supp. 2d 469 (E.D. Pa. 2013); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp. 2d 393 (E.D. Pa. 2002). *Hill* applied the *Glus* test while *McInerney* did not.

[56] ECF Doc. No. 37 at 18.

⁵⁷ *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)). We do not see a hostile work environment claim in the third amended complaint.

⁵⁸ Mr. Fleet filed his Charge on January 17, 2017 and the EEOC dismissed the charge and issued a right-to-sue letter on May 12, 2017, presumably without investigation or proceedings. ECF Doc. No. 33 at ¶¶ 5-6.

⁵⁹ ECF Doc. No. 33 at ¶ 85.

⁶⁰ *Id.* at ¶¶ 35, 86.

⁶¹ *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012).

⁶² *Edelman v. Source Healthcare Analytics, LLC*, 265 F.Supp. 3d 534, 539 (E.D. Pa. 2017) (quoting *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)).

⁶³ *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996) (individual employee cannot be liable under Title VII); *Dici v. Commw. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) (applying PHRA in accordance with Title VII, holding only an employer may be held liable under § 955(a) of the PHRA).